

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 5, 2021**

_____
United States Bankruptcy Judge
_____


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHARLES BRADLEY YOUNG and | § | CASE NO. 19-20386-rlj13 |
| CINDY LOUISE WELLS-YOUNG, | § | |
| Debtors. | § | |

## MEMORANDUM OPINION

The Court's Standing Order for chapter 13 cases defines any amount of a tax refund "in excess of $2000" as "the excess tax refund." General Order 2017-01. The order then states that the chapter 13 trustee "may file a Plan Modification" to provide that the excess tax refund is used to pay the debtor's unsecured creditors. *Id*. The debtor may object to the trustee's plan modification if the debtor has a justifiable need for the excess refund amount. This timeline—receipt of refund, plan modification by trustee, objection by debtor—was not followed here. Instead, the Youngs, the chapter 13 debtors in this case, received a tax refund, used the funds for various needs, and then filed *their* motion to retain the excess refund. The trustee objects to the motion. The Court, finding no bad faith by the Youngs and, further, finding that they needed the excess refund amount for their maintenance and support, approves their motion.

1

## I.

### A.

The Youngs filed their chapter 13 petition on December 6, 2019. About two and a half years ago, Mrs. Young was diagnosed with primary progressive multiple sclerosis. Mr. Young testified to the rapid decline of his wife's health; two years ago, she was walking and working, now she is wheelchair bound and cannot hold a spoon. Mrs. Young's sister quit her job and moved in with the Youngs to provide 24-hour care to Mrs. Young. Mr. Young works for a major railroad company and is paid a good salary. The Youngs are above-median income debtors. Mrs. Young's medical and other expenses related to her care take everything Mr. Young makes and more. Mr. Young credibly testified that he takes care of Mrs. Young while remaining mindful of expenses. The Youngs ask to retain their tax refund for repairs to a car that they can use for taking Mrs. Young to her various appointments.

The Youngs own three cars: a 2012 Nissan Titan, a 2014 Chevy Camaro, and a 2013 Dodge Journey. The Nissan is Mr. Young's truck; it sits high off the ground. Whenever Mrs. Young has to go to an appointment, Mr. Young takes off work and uses his truck to take Mrs. Young to her appointments; he has to physically lift Mrs. Young for both putting her in and taking her out of the truck. Mr. Young loses wages by missing work, and his ability to lift his wife up into and out of the truck is becoming unsustainable—he has three herniated discs and two pinched nerves in his back. Mrs. Youngs's sister cannot physically lift Mrs. Young. The Chevy Camaro is too small to fit a driver, passenger, and Mrs. Young's wheelchair. The Dodge Journey is a larger vehicle that sits relatively low to the ground and has seven seats with a removable third row—an ideal car for transporting Mrs. Young because it fits her, her wheelchair, and a driver.

The Dodge Journey has been at a body shop for almost four years. It was damaged in an accident when the Youngs' daughter-in-law was driving it and another car side-swiped her as she was turning into their driveway. Neither drivers' insurance would pay for the repairs; the tickets did not assign fault to either party. Soon after the accident, the Youngs determined that the repairs and loan payments on the car were not financially feasible and surrendered the car. The lender on the Dodge Journey, however, has never picked-up the car, and it was only at the time that the Youngs began preparing their bankruptcy petition that they discovered the Dodge was still at the body shop. This is, as Mr. Young stated, a solution to a problem. The estimated repairs on the car are $6,227.99. According to the bankruptcy schedules, the car is worth about $6,400.

Mr. Young testified that he wants to repair the Dodge because it is relatively new, with only 20,000 miles, and because he doesn't think he will be able to purchase another vehicle that would fit his wife's needs right now given their current financial limits. Additionally, the lender on the Dodge Journey did not secure its lien on the car and is thus an unsecured creditor.

**B.**

The main issue before the Court is whether the Youngs may retain their entire tax refund, which was $4,415. Although the timeline was not clearly established at the hearing, the Youngs received this refund, and between that time and the time of the hearing, the Youngs spent the refund *and then* filed their motion to retain the refund. Mr. Young credibly testified that there was a miscommunication, stating that "because we had gotten the refund, [we believed] this had already been handled."[1] The money was spent on a myriad of things. They spent over $5,000 on

---

[1] Mr. Young apologized for spending the refund before gaining Court approval. He stated that if he needed to pay the money back, he would make it happen or pay it back over time. Mr. Young appears to be doing all he can to take care of his wife, with no intent to manipulate the bankruptcy system, stating that "needs arise almost daily and I'm just trying to keep my head above water and take care of my wife."

3

home modifications, including several thousands of dollars at Home Depot, to accommodate Mrs. Young to ensure that she could get in and out of their house and to make places like the bathroom and kitchen more accessible to her.  Mr. Young built a backyard wheelchair ramp with some of the tax refund money.  Although the motion only states the refund is needed to repair the Dodge Journey, Mr. Young testified to the other extraordinary expenses he has incurred that are related to his wife's illness; Mr. Young also stated that he is willing to provide the receipts for the home improvements.  They mentioned only the car repairs in the motion because their attorney believed that would be sufficient.  The repairs on the Dodge Journey, like the numerous home improvements, are "just one of many many many things draining [Mr. Young's] bank account because of this disease."

Because the tax refund has already been spent, the Youngs will still have to come-up with the funds to repair the car.  Mr. Young testified that they have come to an arrangement with the body shop whereby they pay what they can each month—a "pay-as-you-go" type of arrangement.  The payments, according to Mr. Young, will run between $250-500 a month for the repairs.

## II.

### A.

Under the Standing Order Concerning All Chapter 13 Cases in the Bankruptcy Court for the Northern District of Texas, a chapter 13 debtor is allowed to retain the first $2,000 of their tax refund.  Under the General Standing Order, "If the Debtor receives a tax refund, after any allowable IRS offset or offset under the Treasury Offset Program, any amount in excess of $2000 shall be deemed as 'the excess tax refund.'"  Section 20(c).  Thereafter, the "Trustee may file a Plan Modification to increase the Base Amount by the excess tax refund for the benefit of the

allowed general unsecured creditors." *See id.* at (d).  The debtor may object to this plan modification in order to retain the refund above $2,000 without having to add it to the plan base through a "detailed written narrative . . . explaining the Debtor's need for the excess tax refund" as well as "[s]upplemental documentation to support" the debtor's request.  *Id.* at (e)(1), (2).

In most cases, the Court hears requests to retain a tax refund only after the chapter 13 trustee has moved for the debtor to turnover their tax refund or has filed a motion to modify the chapter 13 plan to add the tax refund amount to the required base for the plan.  Here, the Youngs proactively requested that they be allowed to retain their refund amount.

**B.**

The chapter 13 trustee responded and asks that the Court both deny the motion and then require that the Youngs' attorney turnover to him the $400 they paid in fees and expenses to their attorney for bringing the motion.  Although the trustee did not formally object to the motion, at the hearing, he expressed his dissatisfaction with the entire situation—the Youngs having already spent the excess refund rather than having turned it over to the trustee; their attorney having been paid the $400 without prior approval; and their taking-on additional debt without notice.

The Youngs ask that the Court allow them to retain the entire refund to help pay for their expenses related to Mrs. Young's illness.  The motion specifically asks for the funds in order to repair a car that Mrs. Young needs for her travel to and from medical appointments.  The testimony confirmed that the Youngs already used the excess refund for other expenses, including home modifications, to accommodate Mrs. Young.

## III.

### A.

The Fifth Circuit recently held that a provision in the Western District's adopted chapter 13 plan was invalid because it abridged below-median income debtors' substantive rights to use their "excess" tax refund income to finance reasonably necessary expenses for their maintenance and support. *Diaz v. Viegelahn (In re Diaz)*, 972 F.3d 713 (5th Cir. 2020). The Western District's form chapter 13 plan had a provision, like the provision in the Northern District's standing order, that allowed every chapter 13 debtor to retain the first $2,000 of their tax refund but, unlike the Northern District's order, required every debtor to turnover any excess to the trustee unless (i) the debtor filed a motion to retain the tax refund, (ii) the debtor's plan paid unsecured creditors in full, and (iii) the trustee did not object. There was no other way for chapter 13 debtors in the Western District to keep excess refunds, even if they were in need of the funds to finance necessary expenses.

The debtor in *Diaz* was sympathetic. A single mother with two minor boys and below-median income, Diaz's income was less than half of the median income for Texas (a little under $30,000/year). Two days before her confirmation hearing, the debtor filed an amended chapter 13 plan that crossed out the tax refund turnover provision in the district chapter 13 plan, amended her Schedule I (monthly income) to pro-rate, or "amortize," the full tax refund she expected to receive on a monthly basis by adding 1/12 of her expected refund to "other monthly income," and also amended her Schedule J (monthly expenses) to include additional expenses that essentially offset her tax refund monthly income. *Id.* at 716. The amended expenses increased her food and housekeeping budget to $410; $50 for clothing, laundry, and dry cleaning; $40 for personal care products and services; and $36 for entertainment, clubs,

recreation, newspapers, magazines, and books. *Id.* at 719. (For comparison, her original expenses were $360 for food, $40 for personal care, and $0 for the other two categories). The amended expense amounts were well below the IRS's National Standards. The chapter 13 trustee objected to the plan because it was filed two days before the confirmation hearing. The bankruptcy court denied confirmation, stating that the debtor could not just cross-out the tax refund provision of the district's form plan, that tax refunds are disposable income, and that the instructions to Schedule I (income) do not require that the debtor account for annual tax refunds as monthly income.

The Fifth Circuit overturned the bankruptcy court's ruling. The Fifth Circuit determined that the local rule, "which automatically designate[d] debtors' 'excess' tax refund amounts as 'projected disposable income' to which the Trustee [was] entitled" was invalid because of the effect the rule had (or could have) on below-median income debtors. *Id*. at 718, 719. The court looked to the Supreme Court decision in *Hamilton v. Lanning*, 560 U.S. 505 (2010), which discusses how to calculate projected disposable income and emphasizes that courts must treat above- and below-median income debtors' disposable income differently. The Circuit in *Diaz* also emphasized that local rules must be only procedural; they may not "abridge, enlarge, or modify any substantive right." *Diaz*, 972 F.3d at 719 (quoting *Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1099 (5th Cir. 1984)); *see* 28 U.S.C. § 2075. "Section 1325(b)(2) of the Code, as clarified in *Lanning*, plainly allows below-median income debtors to retain any income that is reasonably necessary for their maintenance and support." *Diaz*, 972 F.3d at 719. The provision that required all chapter 13 debtors to turnover to the trustee all tax refunds in excess of $2,000 as "projected disposable income" abridged "below-median income debtors' substantive rights to

7

use their 'excess' refund income to finance reasonably necessary expenses for their maintenance and support." *Id.* at 719.

The Youngs, unlike the debtor in *Diaz*, are above-median income debtors. More important, the Standing Order in the Northern District does not mandate the turnover of any portion of a tax refund; it defines what constitutes an "excess tax refund" and sets forth the procedure for addressing the refund. It does not limit or interfere with chapter 13 debtors' substantive rights as did the Western District's form plan.

### B.

Many courts have characterized tax refunds as disposable income.[2] How courts deal with the consequences of this designation depends upon local rules, confirmed plan provisions, and the facts of the case.

Several courts have allowed over-the-median income chapter 13 debtors to retain their full tax refund through a motion that demonstrates the debtor's refund is reasonably necessary for the debtor's maintenance and support. *In re Stacks*, 588 B.R. 263, 268 (Bankr. N.D. Ga. 2018) (where district's local form plan allowed the debtor to retain first $2,000 of tax refund and any remaining amount went to chapter 13 plan, debtors allowed to retain excess refund after filing a motion to retain tax refunds and showing that such funds are reasonably necessary for support of the debtor's household); *In re Michaud*, 399 B.R. 365, 373 (Bankr. D.N.H. 2008) ("If the debtors believe that retention of some or all of the income tax refund payable to the Trustee is necessary for the maintenance and support of the debtors or their dependents within the meaning

---

[2] "The majority of courts that have considered the issue have concluded that a debtor should be required to devote this income to her Plan." *In re Raybon*, 364 B.R. 587, 591 (Bankr. D.S.C. 2007). *See also In re Harchar*, 694 F.3d 639 (6th Cir. 2012); *In re Murchek*, 479 B.R. 521 (Bankr. N.D. Iowa 2012); *In re Cleaver*, 426 B.R. 390 (Bankr. D.N.M. 2010); *In re Skougard*, 438 B.R. 738 (Bankr. D. Utah 2010); *In re Michaud*, 399 B.R. 365, 371 (Bankr. D.N.H. 2008); *In re LaPlana*, 363 B.R. 259 (Bankr. M.D. Fla. 2007); *In re Mullen*, 369 B.R. 25 (Bankr. D. Or. 2007).

of the Bankruptcy Code, the debtors may make a motion . . . showing an entitlement to a tax refund."); *In re Raybon*, 364 B.R. 587, 592 (Bankr. D.S.C. 2007) (over-median income chapter 13 debtor could retain tax refund through a motion showing that the refund is reasonably necessary to be expended for her maintenance or support under § 1325(b)(3)); *Navejer v. King*, No. 07-C-654, 2007 WL 3129731, at *2 (E.D. Wis. Oct. 22, 2007) ("Obviously, unexpected expenses arise in the course of everyday life due to unusual circumstances. . . . . To the extent that this allowance [one half of tax refund] is inadequate, the debtor can petition the trustee and ultimately the court to allow him to keep the remainder of his tax refund for a particular year.").

Some courts have not looked to whether the refund is necessary for support and maintenance but, rather, have allowed retention of the tax refund for unexpected expenses. *See, e.g.*, *In re Pearson*, No. 08-29014, 2009 WL 3297786, at *2 (Bankr. D. Utah Oct. 13, 2009) (allowing above-median income chapter 13 debtors to "modify" their confirmed plan that required turnover of tax refund above $1,000 to retain over $3,600 of their refund to pay for dental work, to repair debtors' roof, and to replace and install new garage doors; the debtors' request to retain the refund for professional carpet cleaning, for dental work that was not considered an "immediate need," and to replace windows was denied).

One court addressed the circumstance where the chapter 13 debtors spent post-petition tax refunds without first obtaining court approval—permission typically sought only after the chapter 13 trustee files a motion for turnover of the funds. "Although not favored, the Court has generally granted these requests from Chapter 13 debtors who can demonstrate real need." *In re Reed*, No. 03-40669, 2007 WL 2023577, at *2 (Bankr. D. Kan. July 9, 2007).

> The *much* preferred method for dealing with the use of tax refunds is for a debtor to file a request to use the funds before the tax refund is spent, or better yet, before the tax refund is even received. Furthermore, it should go without saying that the request to use the funds should only be made when the debtor has truly incurred an

9

> unbudgeted/unpredicted expense that cannot otherwise be covered by his or her earned income.

*Id*. (emphasis in original).  Like such courts, in the Northern District of Texas, a chapter 13 debtor may retain any amount of their "excess" refund, above $2,000, where the debtor can demonstrate their need to retain the refund.

The Youngs requested to retain their refund before the trustee filed a plan modification to capture the excess refund.  At the hearing, Mr. Young credibly testified that the refund is reasonably necessary to be expended for the Youngs' maintenance or support.  Mrs. Young has a disease that impacts her ability to function.  The Youngs need a car that will not only fit Mrs. Young, her wheelchair, and a driver, but also one that is conducive to transferring Mrs. Young from her wheelchair to the car.  Currently, Mr. Young has to take-off work to drive Mrs. Young to any appointment and then has to physically lift Mrs. Young out of her wheelchair and up into his truck.  Mr. Young has his own health issues that may soon impair his ability to lift Mrs. Young up into and out of the truck.  The Youngs have asked the Court to use their excess refund to repair a car that they already own and would meet their special transportation needs.  Although the Youngs spent the refund before the hearing, there is no indication, given their circumstance, of bad faith on their part.  The Court will therefore grant the Youngs' motion to retain their tax refund.

## C.

In the General Standing Order, section 21(d) states that "An attorney may not receive a post-petition retainer or payment from the Debtor other than as specified in this General Standing Order without leave of Court."  A motion to retain a tax refund is not specified in the General Standing Order.  In this case, in the Youngs' motion to retain tax refund, the last sentence of the motion states that they paid Mr. Swindell, their bankruptcy attorney, $400 out of their tax refund

to prepare this motion. Mr. Swindell needs to ask the Court for approval of payment from the Youngs for his preparing this motion and should follow the procedure set out in the General Standing Order, Section 21(j).

**D.**

The chapter 13 trustee also brought-up the need for the Youngs to obtain court approval to incur debt. This was presumably in response to Mr. Young's testimony that the body shop has agreed to work out a deal with him in repairing the car. Mr. Young will pay the body shop between $250-500 a month—whatever Mr. Young can afford—and the body shop will incrementally repair the car until it is fully repaired.

It is common practice in this district for a chapter 13 debtor to file a motion to incur debt to take on additional financial obligations after a plan has been confirmed. The typical example is where a debtor needs to buy a new car because their old car needs to be replaced. While this is a common practice, there is nothing in the Code *per se* that prohibits (or authorizes) a chapter 13 debtor from incurring post-petition debt. *See In re Ward*, 546 B.R. 667, 678 (Bankr. N.D. Tex. 2016). Nevertheless, a chapter 13 debtor (individual, not running a business) should not borrow post-petition unless it is for "property or services necessary for the debtor's performance under the plan" in compliance with § 1305 of the Code in order for the debt to be "dealt with under a plan or discharged." *Id.* (this Code section, according to Judge Jernigan in *Ward*, suggests that only trustee approval is needed for this kind of debt incurrence). Judge Jernigan did state, though, that court approval was necessary "whenever significant postpetition debt is incurred by a debtor, ***if for no other reason than because of the possible impact on the debtor's plan and the debtor's prospects for rehabilitation.***" *Id.* (emphasis in original).

11

Other courts have addressed this issue. If Mr. Young wants to make these payments directly to the body shop and the body shop does not want to file a claim in the bankruptcy, approval by the Court or the trustee is unnecessary. *See In re Loden*, 572 B.R. 211, 215 (Bankr. W.D. Ark. 2017) (stating that only if the debtors wanted to modify the plan to reflect payments being made "outside the plan" or to bring in a new creditor, then the modification of § 1329 still applies; otherwise, if payments are made outside the plan, no approval is needed); *see also In re Fields*, 551 B.R. 424, 428 (Bankr. D. Minn. 2016) ("There is nothing in the Bankruptcy Code that requires court authorization for a debtor in chapter 13 who is not 'engaged in business' to incur post-petition debt or to obtain credit."); *but see In re Zvoch*, 618 B.R. 734, 740 (Bankr. W.D. Penn. 2020) ("The issue is conspicuously well-settled in this district: *all chapter 13 debtors must seek prior Court approval before incurring any postpetition financing or borrowing of any kind*.") (emphasis in original). Here, the body shop is presumably protected by a mechanic's lien and the terms of the agreement. Mr. Young testified that no work would be completed until he paid for it.

The Youngs are not asking to take-out a loan to pay for the repairs; they will just pay what they can each month. Debtors in chapter 13 are not required to ask the trustee or the Court for permission to get an oil change, change their brake pads, replace a hot water heater, or any other such repair unless they need to take out a loan for those repairs.

**Conclusion**

The Court grants the Youngs' motion to retain their entire 2019 tax refund. Under the Court's General Standing Order, a debtor may retain any amount of their tax refund above the first $2,000 where the debtor can show that they need the extra money for unexpected expenses or for their basic maintenance and support. The Youngs showed that they need the extra funds to

pay for the unexpected but necessary costs associated with Mrs. Young's condition. They have asked to retain the refund to repair a vehicle that is needed to transport Mrs. Young to her doctors' appointments. They have a reasonable and genuine need for the car. Although the Youngs have already spent the refund, there was no bad faith on their part, and they were at least proactive by bringing this motion. The funds were used in caring for Mrs. Young and for her special needs. These debtors are doing their best to cope with the effects of Mrs. Young's illness and have demonstrated the need to retain their entire tax refund of $4,415.

For the $400 paid pre-motion to their attorney, Mr. Swindell must, per the Court's General Standing Order, seek Court approval for such payment.

### End of Memorandum Opinion ###